811 F.2d 608
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Danny Benito TAYLOR, Petitioner-Appellant,
v.
Herman C. DAVIS, Warden, Respondent-Appellant.
 No. 86-5193.
 United States Court of Appeals, Sixth Circuit.
 Dec. 9, 1986.
 
 Before WELLFORD, MILBURN and BOGGS, Circuit Judges.
 PER CURIAM.
 
 
 1
 Petitioner-appellant, Danny Benito Taylor, appeals the denial by the District Court of his claim for habeas corpus relief. On appeal, petitioner's only remaining basis for such relief is that his trial counsel's performance denied him his sixth amendment right to effective assistance of counsel.
 
 I.
 
 2
 The state appellate court on direct appeal summarized the facts as follows:
 
 
 3
 At the suppression hearing it was developed that the two robbery victims in this case very adequately and properly identified the defendant as the individual who robbed them while they were washing clothes in a laundromat in the 2700 block of Lamar Avenue in Memphis, Tennessee, on October 31, 1978. Police were called to the scene and one of the victims gave a description of the robber which was transmitted in a general police broadcast. Two days later, on November 2, 1978, precinct officers on routine patrol in that area received a dispatch to investigate a suspicious person at a laundromat at 2717 Lamar Avenue. Arriving at that location and looking through a front window, they observed two persons, one female and one male. The female person was folding clothes while the male was sitting on the counter. As they entered the laundry to investigate the male jumped from the counter and started at, "a fast walk, almost a trot, towards the rear door of the laundry." There had been several robberies in the particular area in and about the laundromat vicinity. In the light of their call to investigate a suspicious person at that location the officers, further motivated by defendant's conduct, requested him to halt. He continued to proceed toward the rear door where he was apprehended by the two officers. The testifying officer stated he had no intention of arresting the defendant, or anyone, when they initiated their investigation. When he was stopped they patted him down as a protective measure. The body search disclosed a straight razor in one pocket and a large folding knife in another. He was arrested on the spot for carrying a dangerous weapon. After having the opportunity to observe the defendant more closely the officers decided to hold him for investigation of a number of armed robberies which had occurred in the area. He was transported to police headquarters and on the next day identified by the robbery victims in this case, resulting in his indictment.
 
 
 4
 Defendant testified he was merely passing through the laundromat from one street to another, that he did not conduct himself in any suspicious fashion. He says he did stop when hailed by the officers and subjected to a search which revealed the knife and the razor which he admitted carrying.
 
 
 5
 The petitioner was indicted on April 6, 1979, by the Shelby County Grand Jury on two counts of robbery with a deadly weapon, occurring on October 31, 1978. The case went to trial and ended in a mistrial on June 26, 1979, when the jury reported its inability to agree on a verdict. The second trial began on August 27, 1979. At the conclusion of the proceedings, the jury returned a verdict finding petitioner guilty of both counts of robbery with a deadly weapon.
 
 
 6
 After denial of his motion for a new trial, petitioner appealed the conviction to the Tennessee Court of Criminal Appeals, which affirmed the conviction; the Tennessee Supreme Court denied permission to appeal on March 23, 1981.
 
 
 7
 On September 8, 1981, Taylor filed a petition for post-conviction relief with the Criminal Court of Shelby County, based on ineffective assistance of counsel. The trial court appointed counsel to represent petitioner at the post-conviction evidentiary hearing. The trial court denied the petition for post-conviction relief, and the appeals court affirmed.
 
 
 8
 On August 17, 1983, Taylor filed a petition for a writ of habeas corpus with the district court for the Middle District of Tennessee, the area in which he was incarcerated. The district court denied the petition. On appeal, we remanded the case to the district court for a fuller development of the record and a more complete statement of the court's reasons for denying relief. On remand, the case was transferred from the Middle District to the Western District of Tennessee. The petition was denied.
 
 
 9
 Taylor's petition for habeas corpus raises the same issues that he raised in his state petition for post-conviction relief. The Tennessee appellate court summarized the facts relating to petitioner's ineffective assistance of counsel claim:
 
 
 10
 Taylor's first complaint is that his trial attorney "failed to confer with [him] as often as necessary to elicit matters of defense." The record shows, however, that the attorney was fully familiar with the State's case from the first trial, and that he made a commendable (though unsuccessful) effort to settle the cases on terms favorable to the client. He testified at the post-conviction hearing that his pretrial conferences with Taylor were sufficient in number and length to serve their purpose.
 
 
 11
 There is no proof in the record to the contrary. The appellant has failed to establish any matters that trial counsel should have developed but did not. Indeed, Taylor has thrown considerable doubt on the validity of the purported alibi defense by testifying at his post-conviction hearing not that he was somewhere else at the time of the offenses, but that he "was supposed to be somewhere else at the time of the ... robberies" (emphasis added). We further note that when asked to specify his complaints against his trial attorney, Taylor could say only that his lawyer had not been diligent enough to suit him. Taylor conceded that the attorney was a capable lawyer but complained that "the Public Defender's Office ... [has] an overload most of the time ... and some cases they don't scrutinize as diligently as they should."
 
 
 12
 In point of fact, the only concrete complaint advanced by the appellant concerned trial counsel's failure to subpoena witnesses to support his alibi defense. But the record shows that subpoenaes [sic] were issued but not executed because the witnesses, all related to Taylor, could not be located at the address given by Taylor. He provided his attorney with no further information about the whereabouts of these witnesses, and the lawyer testified that despite his efforts and those of an investigator from the Public Defender's Office, they could not be located.
 
 
 13
 We further note that these purported alibi witnesses were not located for the post-conviction hearing, and affidavits concerning their knowledge about the case were not submitted. Thus, the record fails to indicate what their testimony would have been or whether it would have been material. Under Tennessee law, a conviction may not be overruled "because counsel failed to introduce witnesses without a showing that the witnesses were actually beneficial to the defense." State v. Martin, 627 S.W.2d 139, 141 (Tenn.Crim.App.1981). In fact, the record suggests that one of Taylor's potential alibi witnesses was a sister who ultimately testified on rebuttal for the State; her testimony was not favorable to Taylor.
 
 II.
 
 14
 In Strickland v. Washington, 466 U.S. 668, 687 (1984), the Supreme Court enunciated the correct standard for evaluating the kind of ineffective assistance of counsel alleged here:
 
 
 15
 A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.
 
 
 16
 Petitioner principally argues that his trial attorney was unconstitutionally ineffective because he failed to investigate adequately petitioner's alibi defense, asserting that his attorney did not issue subpoenas for two members of his family as witnesses in the second trial.[1] Petitioner attempts to undercut the attorney's explanation that he could not locate these witnesses by pointing out that the prosecution managed to locate another family member (whose name he had also given to counsel), who lived at the same address as the other alleged alibi witnesses. Petitioner, however, fails to explain how this is related to the inability of the trial attorney to locate other alleged alibi witnesses. Further, the supposed alibi witness found by the prosecutor, in fact, testified against petitioner.[2]
 
 
 17
 The state points to evidence in the record suggesting petitioner was ambivalent at the time of his trial concerning his intention to use alibi witnesses. He testified he had not given his counsel the names of his siblings who were alibi witnesses, but that he could if counsel "want them" [sic]. In response to a question concerning whether these alibi witnesses were going to testify for petitioner, petitioner stated: "I haven't asked them. I ain't in no mood for asking them." One of petitioner's sisters, who he had maintained was an alibi witness, testified that she believed all of the other siblings who petitioner represented as alibi witnesses were at school, not at home, during the time petitioner claims to have been at home. The State also points out that petitioner did not provide counsel with a more current address than the address used in the subpoena for the first trial.
 
 
 18
 Petitioner's counsel testified at the state post-conviction hearing that he requested the Sheriff's department to effect personal service on Vivian and Yvette Taylor, petitioner's sisters and alleged alibi witnesses. The Sheriff was unable to locate these witnesses at the address given. Counsel testified that he told petitioner he could not locate these witnesses at the address given. Counsel further testified that petitioner's alibi "relatives" had apparently not provided petitioner with their current addresses and phone numbers. Counsel further stated that petitioner's inability to provide him with the necessary information to locate the alibi witnesses was the cause of his decision not to subpoena the witnesses again after the initial attempt to locate the witnesses. This evidence does not support petitioner's claim of ineffective assistance of counsel in this respect. We find no error in the district court's determination to this effect.
 
 
 19
 Accordingly, we AFFIRM the district court's dismissal of the petition for habeas corpus.
 
 
 
 [1]
 The petitioner concedes the attorney issued subpoenas for these witnesses in the first trial
 
 
 [2]
 Petitioner also refers in his brief to an affidavit of Yvette Taylor, one of the alibi witnesses subpoenaed for the first trial but not located by counsel, that in his view "clearly reveals" that she was "ready and willing" to testify, but his counsel did not contact her